**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-01952-WYD-MEH

SETH WARNICK, on behalf of himself and
all others similarly situated,

        Plaintiff,

v.

DISH NETWORK L.L.C.,

        Defendant.

---

**DEFENDANT DISH NETWORK L.L.C.'S OBJECTIONS AND, IN THE
ALTERNATIVE, MOTION TO STRIKE THE "REBUTTAL" AFFIDAVIT OF
PLAINTIFF'S EXPERT ANYA VERKHOVSKAYA OFFERED IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

## **TABLE OF CONTENTS**

**Page**

CERTIFICATION OF CONFERRAL ........................................................................................1

SUMMARY OF ARGUMENT ....................................................................................................1

BACKGROUND ..........................................................................................................................3

ARGUMENT ................................................................................................................................7

    I.    VERKHOVSKAYA'S "REBUTTAL" REPORT CONTAINS NOTHING BUT UNTIMELY NEW OPINIONS. ...................................................................7

    II.    VERKHOVSKAYA'S UNTIMELY NEW OPINIONS SUFFER FROM THE SAME DEFICIENCIES AS HER PREVIOUS OPINIONS. .........................9

        A.    Verkhovskaya's Experience And Opinions Still Do Not "Fit" The Class Certification Inquiry. ..........................................................................9

        B.    Verkhovskaya Still Fails To Offer An "Expert" Opinion That Class Members Can Be Identified Through Reference To Reliable Databases. .............................................................................................11

CONCLUSION...........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Near Kirksville*
   2007 WL 2363505 (E.D. Mo. Aug. 15, 2007) ..........................................................................9

*In re Breast Implant Litig.*
   11 F. Supp. 2d 1217 (D. Colo. 1998) ....................................................................................10

*Carrera v. Bayer Corp.*
   727 F.3d 300 (3d Cir. 2013) ...................................................................................................11

*In re CitX Corp., Inc.*
   448 F.3d 672 (3d Cir. 2006) ...................................................................................................13

*Conroy v. Vilsack*
   707 F.3d 1163 (10th Cir. 2013) ................................................................................................9

*Daly v. Fesco Agencies NA Inc.*
   108 Fed. App'x 476 (9th Cir. 2004) (unpublished) ..................................................................7

*Daubert v. Merrell Dow Pharma.*
   43 F.3d 1311 (9th Cir. 1995) ....................................................................................................7

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*
   285 F.3d 609 (7th Cir. 2002) ..................................................................................................11

*E.E.O.C. v. JBS USA, LLC*
   2013 WL 3302429 (D. Colo. Jul. 1, 2013) ..........................................................................7, 9

*Lindner v. Meadow Gold Dairies, Inc.*
   249 F.R.D. 625 (D. Hawaii 2008) ............................................................................................7

*Macaluso v. Herman Miller, Inc.*
   2005 WL 563169 (S.D.N.Y. Mar. 10, 2005) .........................................................................13

*Malletier v. Dooney & Bourke, Inc.*
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ....................................................................................12

*Palmer v. Asarco Inc.*
   2007 WL 2254343 (N.D. Okla. Aug. 3, 2007) .......................................................................9

*Ralston v. Smith & Nephew Richards, Inc.*
   275 F.3d 965 (10th Cir. 2001) ...............................................................................................10

*In re Safeguard Scientifics*
  2004 WL 2644393 (E.D. Pa. Nov. 17, 2004) ..........................................................................14

*Smith v. Wal-Mart Stores, Inc.*
  2012 WL 4051925 (D. Nev. Sept. 13, 2012) ..........................................................................7

*TK-7 Corp. v. Estate of Barbouti*
  993 F.2d 722 (10th Cir. 1993) ..............................................................................................12

*Wilson v. Merrell Dow Pharma.*
  893 F.2d 1149 (10th Cir. 1990) ............................................................................................12

**Statutes**

Federal Rule of Civil Procedure 26 ...........................................................................2, 7, 12

Federal Rule of Evidence 702.............................................................................................1

Federal Rule of Evidence 703.............................................................................................1

Local Civil Rule 7.1............................................................................................................1

**CERTIFICATION OF CONFERRAL**

Pursuant to District of Colorado Local Civil Rule 7.1, counsel for Defendant DISH Network L.L.C. ("DISH") certifies that it has conferred with counsel for Plaintiff Seth Warnick ("Plaintiff" or "Warnick") and that Plaintiff opposes the relief requested herein.

**SUMMARY OF ARGUMENT**

A threshold element of Plaintiff's class certification burden is ascertainability of the proposed class. Membership in the class must be ascertainable through reference to "objective criteria." Plaintiff relies on Verkhovskaya's opinions – set forth in her original affidavit and now in a second affidavit that Plaintiff calls a "rebuttal" – to establish that class membership is determinable by reference to "reliable" databases allegedly identifying the individuals that DISH mistakenly called. (Dkt. 62 (Pl.'s Mem. Supp. Class Cert.) at 12, 13-14 (citing original affidavit); Dkt. 112 (Pl.'s Reply) at 23-24 (citing new affidavit).) Her opinions on this point have been a moving target. After examining her original affidavit, a subpoena response, her deposition testimony, and her newest "rebuttal" affidavit, it is clear that she has no foundation for any opinion about the ascertainability of the class. Plaintiff has disclosed the wrong witness.

Initially, Verkhovskaya (and Plaintiff) claimed that her employer, A.B. Data, had a "reliable" database containing the identity of class members. Verkhovskaya admitted at her deposition, however, that A.B. Data had no such data. Rather, it would purchase the data from third parties – data vendors – and populate an A.B. Data database with that content. She did not know how the vendors collect their data, what data they would be giving her, or whether it was accurate. At the time of her deposition, she had not retained any particular vendor and could not even tell DISH's counsel who she would hire. For these reasons and more, DISH objected and moved to strike her affidavit and testimony under Federal Rules of Evidence 702 and 703. DISH

also moved to compel complete disclosures under Federal Rule of Civil Procedure 26. In response to the motion to compel, Plaintiff claimed that there was "nothing else to disclose."

Having realized that his expert could not provide an adequate evidentiary foundation for Plaintiff's proposed methodology for identifying class members (that reliable data exists and will be utilized), Plaintiff has now changed course, and has provided a "rebuttal" report. In the new affidavit, Verkhovskaya opines that she will probably rely on a vendor called Nexxa Group, Inc. ("Nexxa"). She claims she has used its data before and – based on what she has read in its *marketing* brochures and heard from its employees – Nexxa would be able to produce reliable data about cell phone subscribers.

Among other things, the new affidavit exceeds the scope of rebuttal permitted under Rule 26, which is limited to evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another" party's expert. Verkhovskaya's new affidavit merely attempts to cure the evidentiary deficiencies with her original affidavit. It is an untimely new expert disclosure that should be struck. Even if the Court considers it, however, the new affidavit does not cure the evidentiary problems with Verkhovskaya's opinions. It merely highlights them. Thus, DISH incorporates its original motion to strike and its reply in support thereof, and for the same reasons objects to and moves to strike Verkhovskaya's new affidavit.

Verkhovskaya has experience administering notice and distribution plans for settlement classes, and she has described a similar notice plan here. She has no ability, however, to identify a class through reference to objective criteria; rather, she would ultimately rely on class members to come forward and identify themselves. This is insufficient, and her claim that she and her company can ferret out fraudulent claims is no substitute for demonstrating ascertainability. A.B. Data has no ability to identify the people called by DISH without their consent. It merely

purchases and processes data from third-party vendors, and assumes that the data is accurate. Verkhovskaya cannot attest that Nexxa's data is relevant. She believes that Nexxa will not be able identify the person called by DISH – the person who used the phone; rather, it will identify the accountholder (the person who paid the bill).

Verkhovskaya's "rebuttal" opinions are no more relevant and no more admissible than the opinions expressed in her original affidavit. For these reasons, the Court should strike Verkhovskaya's new affidavit, and sustain DISH's objections to her opinions. A list of her objectionable opinions is attached as Exhibit A.

## BACKGROUND

Verkhovskaya's opinions have been, to say the least, a moving target. Originally, she claimed that she would locate and identify class members by using A.B. Data's Records Database, which she said "contain[ed] telephone numbers, names, and addresses of class members during the class period." (Dkt. 62-10 (Original Affidavit) at ¶ 33.) Similarly, Plaintiff's other proposed expert – Robert Biggerstaff – also opined that A.B. Data provided database services and could identify the "holder" of a telephone number. (Dkt. 62-4 (Biggerstaff Report) at ¶ 24.) Prior to the deposition, DISH requested any materials that Verkhovskaya had describing A.B. Data's Records Database, demonstrating how it worked, as well as its reliability. Verkhovskaya brought nothing of the sort to the deposition.

However, she did make several surprising admissions. She is a settlement-class administration and notice expert. (Ex. B (Verkhovskaya Dep.) at 52:6-9, 242:13 to 243:16.) She could not identify one case where she was retained pre-settlement or pre-certification. (*Id.* at 14:5-12.) She believed that the sole purpose of her affidavit was to outline a plan for giving class members notice post-certification. (*Id.* at 5:16-25.) She did not know if a class had been certified in this case and had not been given a class definition. (*Id.* 48:25 to 49:4, 88:22-24.)

While her testimony is offered to support Plaintiff's claim that a class of individuals called by DISH without consent is a class that can be identified through reference to "objective criteria," she did not know consent was an issue and believed that "objective criteria" was irrelevant to her work. (*Id.* at 89:13 to 90:8, 145:5-17, 147:7-15.)  If she were asked to identify a method that would identify individuals who gave DISH consent, she would propose sending them questionnaires or claim forms that would allow them to identify themselves. (*Id.* at 9:11-10:21.)

Contrary to her claim that the Records Database "contain[ed] telephone numbers, names, and addresses of class members during the class period," (Original Aff. at ¶ 33), she revealed that the it actually "does not have any data." (Ex. B at 55:2-12.) Nor does she have any familiarity with the process of actually identifying individuals called by DISH; instead, she would rely on a third-party data vendor to accomplish that task. (*Id.* at 74:19 to 75:14.) Because Verkhovskaya's reliance on third-party vendors was revealed for the first time at her deposition – just two weeks before DISH would be filing its opposition to class certification – DISH attempted to obtain information about the data and methods employed by Verkhovskaya's third-party data vendors. Verkhovskaya was not helpful.

She testified that she did not know which vendor A.B. Data would hire. (Ex. B at 75:19 to 76:5, 86:20 to 87:7.) She did not know where vendors get their data, whether it is accurate, or even what data they obtain (i.e., do they identify a phone's user or the account holder). (*Id.* at 96:25 to 97:16, 85:3-20, 123:3-25.) She simply assumes the accuracy of the data. (*Id.* at 77:9-12, 96:25-97:16.) If anyone had ever verified its accuracy, it was not her. (*Id.* at 162:25 to 163:6.) She admitted that the person most able to answer these types of questions would be the vendors themselves. (*Id.* at 118:20-23.)

DISH then sought the information from Plaintiff's counsel. He insisted that DISH subpoena Verkhovskaya. Again, she was not helpful. In response to a request for documents that validated the vendors' reliability and accuracy, she provided sixty-one pages of general information printed from the websites of Experian, Nexxa, and the United States Postal Service. (Ex. C (Subpoena Response Exhibit 2).) The printouts included, among other things, office locations, employee biographies, marketing materials or advertisements, and, for the USPS, a history of postage stamps and a list of significant dates, such as the year that Benjamin Franklin was appointed the first Postmaster General. (*Id*.) She produced what appears to be an affidavit for another case authored by another A.B. Data employee that does not identify any vendors, let alone disclose the methods they employ. (Ex. D (Relevant Excerpt of Subpoena Response Exhibit 3).)

A few weeks later, after DISH opposed class certification, Verkhovskaya produced a new affidavit, which Plaintiff refers to as her "rebuttal" report. Her new affidavit discloses what should have been disclosed in the first place: (1) the Records Database is just a "shell" database; (2) Verkhovskaya will not identify class members; (3) her company, A.B. Data, will hire a third-party data vendor to do that. (New Aff. at ¶ 10.) Most of her new affidavit is dedicated to supporting her heavy reliance on data vendors with information that she did not disclose in her original affidavit and did not disclose during her deposition – even though she was asked.

She now claims that A.B. Data will hire a company called Nexxa. (New Aff. at ¶¶ 8, 11.) She also claims (ridiculously) that she knows Nexxa can do what she needs done because (1) it is a member of something called the Direct Marketing Association and "follows the spirit and letter of the law" (*id.* at ¶ 13), (2) it has marketing materials saying it can (*id.* at ¶ 14), and (3) she has had conversations with its employees who have told her that Nexxa is also capable of doing what

she asks it to do (*id.* at ¶¶ 14, 16).  While she testified at her deposition that she did not know if Nexxa could identify the user of a cell phone, she now believes that Nexxa cannot.  It will identify the accountholder, not the person who used the phone.  (*Id.* at ¶ 16.)

She also claims that Nexxa will perform tasks that she did not discuss at all in her original affidavit, such as the determination of who owned a particular number when it was called by DISH at some point in the past even if the number has changed hands since then.  (*Id.* at ¶ 20.)  Finally, she claims that Nexxa has a "telephone number database," which (Nexxa's employees have assured her) is "updated and hygiened regularly," whatever that means.  (*Id.* at ¶ 14.)

Verkhovskaya is also now claiming that it would be possible to cut Nexxa out of the process and still collect similar data by issuing subpoenas to wireless telecommunications carriers.  (*Id.* at ¶¶ 23-25.)  She admitted in deposition that this was *not* a method that she had proposed in this case, (Ex. B at 262:10-15), was not a method that she has ever used.  (*Id.* at 262:3-9), and she did not know what information cell phone providers will release about their subscribers.  (*Id.* at 77:23 to 78:8.)  And, she admitted that she did not know whether cell phone providers would be able to identify the actual or authorized user of the cell phone – i.e., the person who received the phone call – as opposed to the person who merely pays the bills for the cell phone account.  (*Id.* at 264:9-24.)

It also became apparent that the only way to actually identify individuals who gave DISH consent to be called – the actual issue at the center of Plaintiff's class certification motion – would be through submitting "claim forms" to these individuals so that they could identify themselves.  Self-identification by answering questionnaires is not "objective criteria."  In the new affidavit, Verkhovskaya now opines that A.B. Data has procedures in place to prevent

"fraudulent" claims in the claims process.  (New Aff. at ¶¶ 21-22.)   Apparently, A.B. Data will decide who does and does not have a valid claim.

## ARGUMENT

### I. VERKHOVSKAYA'S "REBUTTAL" REPORT CONTAINS NOTHING BUT UNTIMELY NEW OPINIONS.

Verkhovskaya's new affidavit is an impermissible second attempt to set forth her opinions in a manner that can survive the Court's gatekeeping function under *Daubert*.  It does not address or rebut anything in one of DISH's experts' reports.  Her new affidavit, therefore, exceeds the scope of rebuttal permitted under Rule 26.  Since DISH already deposed Verkhovskaya and filed its opposition to the class certification motion, considering the new opinions would unfairly prejudice DISH.  The affidavit should be struck on this basis alone.

A rebuttal witness is a witness "intended solely to contradict or rebut evidence on the same subject matter identified by another party."  *E.E.O.C. v. JBS USA, LLC*, 2013 WL 3302429, at *6 (D. Colo. Jul. 1, 2013) (*quoting* Fed. R. Civ. P. 26(a)(2)(C)(ii)).  On the other hand, "if the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one."  *Smith v. Wal-Mart Stores, Inc.*, 2012 WL 4051925, at *1 (D. Nev. Sept. 13, 2012) (internal quotations omitted) (striking "the bulk" of expert's report).  Where an expert opinion is presented as "rebuttal" but does not constitute a proper rebuttal opinion, it should be struck. *E.E.O.C.*, 2013 WL 3302429, at 7-8 (granting motion to strike "rebuttal" expert opinions prior to trial); *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008) (same); *Daly v. Fesco Agencies NA Inc.*, 108 Fed. App'x 476, 479-80 (9th Cir. 2004) (upholding decision to exclude opinions) (unpublished).

Verkhovskaya's new affidavit contains only new opinions that are not proper rebuttal. While she claims that her affidavit is in part intended to "respond to relevant portions of the reports submitted" by DISH's experts, (New. Aff. at ¶ 2), she does not mention either of DISH's experts other than to admit that she *does not* address the issues they address, (*id.* at ¶ 19). In fact, she admits that she submitted her new affidavit in order to "reiterate and clarify the proposed process for identifying proposed class members." (*Id.* at ¶ 2.) In keeping with this admission, rather than offer rebuttal, Verkhovskaya attempts to fill in the holes she left in her original affidavit. While she originally failed to disclose her reliance on third parties, now she does. While she previously claimed she could not identify a vendor that she would hire in this case, now she identifies Nexxa. While she was unable at her deposition to disclose any basis for relying on Nexxa's data, she now discloses (albeit ridiculously) marketing brochures and conversations with its employees. She also discloses entirely new steps to her proposed plan. For example, she now claims that Nexxa can provide information about cell phone reassignment. However, at the time of her deposition, Verkhovskaya could not identify a single vendor who provides reassignment data nor how any vendors obtain reassignment data. (Ex. B at 226:15-19.) Her new, bare conclusion that Nexxa can determine reassignment, despite her prior testimony that she has no experience or familiarity with how that process would be done or how to identify reliable data, lacks credibility. She also opines on the use of a subpoena process to identify class members, and the verification of claims submitted by class members, but these were not part of her original plan. In fact, she testified at her deposition that subpoenaing carriers was not part of her plan.

The "rebuttal" opinions should have been disclosed, if at all, in Verkhovskaya's original affidavit. Instead, Plaintiff waited until after DISH could no longer address them. There is no

justification for this late disclosure. The deadline for DISH's expert disclosures passed before the new affidavit was submitted, and DISH's experts therefore did not address the new opinions. *E.E.O.C.*, 2013 WL 3302429 at *7-8 (striking new report where opinions had not been addressed by opponent's experts and deadline for expert designations had passed). The Court has already ruled that it will "grant no further extensions of [case] deadlines absent a showing of exceptional cause." Dkt. No. 55, Minute Order (Aug. 5, 2013); *see also Palmer v. Asarco Inc.*, 2007 WL 2254343, at *4 (N.D. Okla. Aug. 3, 2007) (finding late disclosure not "harmless or substantially justified" where opponent had short time frame to prepare rebuttal and court was disinclined to delay the trial date). DISH already filed its opposition to class certification. *In re Air Crash Near Kirksville*, 2007 WL 2363505, *5 (E.D. Mo. Aug. 15, 2007) (finding prejudice where opponent had "partially drafted a motion for summary judgment in reliance on [p]laintiff's case as it stood before" new expert disclosure) (collecting cases). Since several independent reasons exist for finding prejudice, Verkhovskaya's affidavit should be struck.

## II. **VERKHOVSKAYA'S UNTIMELY NEW OPINIONS SUFFER FROM THE SAME DEFICIENCIES AS HER PREVIOUS OPINIONS.**

Even if Verkhovskaya's new affidavit could be deemed proper, it suffers from the exact same deficiencies as her original affidavit. Namely, her experience and opinions do not "fit" the issues before the Court. And she impermissibly assumes the accuracy of data to be purchased from third party vendors without knowing what she will get.

### A. **Verkhovskaya's Experience And Opinions Still Do Not "Fit" The Class Certification Inquiry.**

Verkhovskaya's opinions and experience remain irrelevant to the issues before the Court. Plaintiff relies on Verkhovskaya solely to demonstrate that the class is identifiable through reference to "objective criteria." (Dkt. 62 (Pl.'s Mem. Supp. Class Cert.) at 13-14; Dkt. 112 (Pl.'s Reply) at 21, 23-24.) Thus, Verkhovskaya's expertise and her opinions must relate directly to

that issue, or they should be struck. *See Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (upholding district court's exclusion of expert testimony where expert had "no particular expertise" related to specific issue presented); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (10th Cir. 2001) (upholding exclusion of expert testimony where subject at issue was not "within the reasonable confines" of expert's subject area); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1223 (D. Colo. 1998) (barring expert opinion where it did not relate to plaintiff's theory of the case) (*citing Daubert v. Merrell Dow Pharma.*, 43 F.3d 1311, 1315 (9th Cir. 1995)).

Verkhovskaya's experience and opinions do not relate at all to the identification of class members through "objective criteria." Rather, her experience is in administering *settlements*, and getting notice and payments out to *settlement class members*. A *settlement* class exists *after a court has determined that the class may be certified*. At her deposition, Verkhovskaya was unable to identify a single case in which a court has approved her playing any role in the critical, and hotly disputed, stage of whether a proposed class was ascertainable. (Ex. B at 14:5-12.) Her new affidavit merely confirms this deficiency. Just as she previously admitted that her affidavit only set forth a process for notifying class members post-certification, that she did not believe "objective criteria" were relevant, and that she did not address consent, her new affidavit states that she "was not retained for the purpose of addressing that question . . . ." (New Aff. at ¶ 19.)

Just as her experience is not on point, her opinions do not advance Plaintiff's position. Plaintiff's goal is the identification of a class of individuals who received phone calls from DISH without their consent, but Verkhovskaya now discloses that Nexxa will not even identify the people DISH called – the cell phone's user – and will instead identify accountholders. (*Id.* at ¶ 16.) Moreover, she admitted at her deposition that if the Court wants to know which putative

class member gave DISH consent, someone will have to ask the class members themselves. That self-identification process would rely on subjective and self-interested claims, not objective criteria, as noted in our previous briefing.

Verkhovskaya now informs us that A.B. Data uses "proprietary claims and class action software . . . to develop custom applications tailored to the specific needs of each case." (New Aff. at ¶¶ 21-22.) This tells us nothing at all. What software? Who developed it? How does it work? Has it worked in the past? Has anyone ever verified it? Do others in the industry use it? Has the software been used to develop an application "tailored" to this case? If not, how is it even relevant? These questions are not answered. Based on similar deficiencies, the Third Circuit rejected a similar argument where a plaintiff offered the affidavit of a settlement administrator to cure concerns with the reliability of using self-reports to identify a class. *Carrera v. Bayer Corp.*, 727 F.3d 300, 310-11 (3d Cir. 2013) (holding that administrator's declaration "does not show the affidavits will be reliable" and "does not propose a model for screening claims that is specific to this case").[1] This Court should reject it, too.

### B. Verkhovskaya Still Fails To Offer An "Expert" Opinion That Class Members Can Be Identified Through Reference To Reliable Databases.

Given Verkhovskaya's lack of experience and knowledge of the relevant inquiry, it should come as no surprise that she has stated no actual "expert" opinion on any issue before the Court. She is still merely relaying or parroting the knowledge (or marketing materials) of another. *Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613-14 (7th Cir. 2002) (barring testimony from hydrogeologist whose testimony relied upon groundwater flow

---

[1] The court remanded the case because, when class certification was pending before the district court, the Third Circuit had not yet adopted an ascertainability requirement. *Carrera*, 727 F.3d at 311. Here, however, Plaintiff recognized the requirement of ascertainability in his opening brief. He just failed to meet it. He should not be given another opportunity.

models because validity of models was at issue, but expert did not create them and was "not competent to opine" on them); *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993) (barring valuation testimony from proposed expert because he merely adopted market projections created by someone else and had no "familiarity with the methods or reasoning used" in arriving at the projections); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (barring testimony that relied on regression analysis where expert did not perform the analysis and was not qualified to perform the analysis).

Verkhovskaya has not offered and cannot offer an "expert" opinion on the reliability of third-party data. She merely assumes the accuracy of such data.[2] Verkhovskaya's new affidavit reestablishes this problem, rather than solving it. She will not independently verify the accuracy of Nexxa's data or the reliability of its methods. She simply relies on what it says about its data. After stating that Nexxa will be the vendor she "anticipates" will be used to provide cell phone data to identify members of Plaintiff's proposed class, Verkhovskaya cites to a Nexxa marketing brochure. (New Aff. at ¶ 14.) That is not evidence of anything. *Wilson v. Merrell Dow Pharma.*, 893 F.2d 1149, 1153 (10th Cir. 1990) (where expert relies on hearsay, it is not admitted for its truth).[3] Verkhovskaya attempts to bolster the credibility of the document, but to do this she provides more of the same unsubstantiated and vague hearsay, asserting that she has

---

[2] She buys the data from third-party data vendors, like Nexxa. She has never validated Nexxa's data, has no knowledge of where Nexxa gets data, and does not even know what data it possesses. (Ex. B at 77:9-12; 96:25 to 97:16; 85:3-20; 123:3-25.) She confessed that such questions had not arisen in her previous TCPA cases, and she could not answer them. (*Id.* at 171:20-172:25.) As a settlement administrator, she has simply assumed that whatever information vendor she utilizes has reliable data, without any familiarity with the methods that vendor used to compile its dataset (or, indeed, without any knowledge of what data is *in* that data set). (*Id.* at 85:3-20; 96:25 to 97:16; 76:17 to 77:12; 133:9-17.)

[3] In fact, by conducting a simple internet search, DISH's counsel was able to find three other companies that make the same claim – verbatim – as that made in the marketing brochure. (Dkt. 135 (Reply Supp. Mot. Compel Rule 26 Disclosures) at 6 n. 3 (*citing* Ikels Decl. at ¶¶ 10-11).)

"confirmed with a representative of Nexxa that the information included in the document is accurate." (New Aff. at ¶ 14.) None of this is an "expert" opinion. It is just a recital of unverified advertising claims.

Verkhovskaya also now claims that Nexxa can identify the holders of cell phone numbers following reassignment. The entirety of her opinion appears to rest on the following statement: "A.B. Data has coordinated with and confirmed with Nexxa that it is possible to identify reassigned numbers." (New Aff. at ¶ 20.) Again, without any independent expertise, she is merely attempting to tell the Court what another "expert" not before the Court is supposedly capable of doing, and is repeating untested hearsay claims.

Perhaps recognizing that this reliance on Nexxa is insufficient, she also now claims that it would at least be possible to collect similar data without involving Nexxa or any other vendor but instead by issuing subpoenas to wireless telecommunications carriers. (New Aff. at ¶¶ 23-25.)[4] However, she once again brings no expertise to the table, as she admitted at deposition that she did not know (1) whether cell phone providers would be able to identify the actual user of the cell phone – i.e., the person who received the phone call, (Ex. B at 264:9-24), or (2) what information cell phone providers would release about their subscribers, (*id.* at 77:23 to 78:8). Since she now attempts to contradict this testimony, her opinions should be struck for that additional reason. *In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006) (affirming decision to

---

[4] She says that it is "common knowledge" that telecommunications carriers maintain detailed information about their subscribers. (New Aff. at ¶ 23.) She provides no explanation as to how could she possibly know what information other companies maintain, or the quality and integrity of that information. Part of her "opinion" is merely a repetition of what she read in a report published on another company's website. (*Id.* at ¶¶ 23-24 & n. 3.) She claims that this subpoena process is used "to identify class members in many class actions." (*Id.* at ¶ 24.) But she does not claim that any court has ever held that a plaintiff could meet its burden to demonstrate ascertainability by suggesting that subpoenas can be issued to third parties who might be able to identify individual class members.

disregard expert opinion that contradicted expert's deposition testimony); *Macaluso v. Herman Miller, Inc.*, 2005 WL 563169, at *7 (S.D.N.Y. Mar. 10, 2005) (expert affidavit that contradicted deposition testimony to be inadmissible for summary judgment purposes) (citations omitted); *In re Safeguard Scientifics*, 2004 WL 2644393, at *6 (E.D. Pa. Nov. 17, 2004) (same).

## CONCLUSION

It is now apparent that Plaintiff has not taken his burden seriously. Instead, the record demonstrates that Plaintiff has played a game of bait-and-switch, leaving DISH to depose Verkhovskaya and oppose class certification based on incomplete, conclusory opinions and, therefore, without an understanding of Plaintiff's actual supporting evidence and testimony. Even now, Plaintiff rests a central element of class certification on the testimony of an "expert" who knows nothing about it. It is time to end the game. The Court should sustain DISH's objections and strike Verkhovskaya's affidavits.

Dated this 7th day of November, 2013.

Respectfully submitted,

By: */s/ Zuzana S. Ikels*
Richard R. Patch (CA Bar No. 88049)
Zuzana S. Ikels (CA Bar No. 208671)
Jeremiah J. Burke (CA Bar No. 253957)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, CA  94111-4213
Telephone:   415.391.4800
Facsimile:   415.989.1663
Email:   ef-rrp@cpdb.com
  ef-zsi@cpdb.com
  ef-jjb@cpdb.com

Todd E. Mackintosh, Esq.
WOOD, RIS & HAMES, P.C.
1775 Sherman Street, Suite 1600
Denver, CO  80203
Telephone:   303.863.7700
Facsimile:   303.830-8772
Email:   tmackintosh@wrhlaw.com

Attorneys for Defendant
DISH NETWORK L.L.C.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of November, 2013, I electronically filed the foregoing **DEFENDANT DISH NETWORK L.L.C.'S OBJECTIONS AND, IN THE ALTERNATIVE, MOTION TO STRIKE THE "REBUTTAL" AFFIDAVIT OF PLAINTIFF'S EXPERT ANYA VERKHOVSKAYA OFFERED IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** with the Clerk of Court using the CM/ECF system which will send the notification of such filing to the following e-mail addresses and/or mailed copies of the foregoing via the U.S. Mail, postage prepaid, as follows:

*Attorney for Plaintiff*
Keith James Keogh, Esq.
Timothy James Sostrin, Esq.
KEOGH LAW, LTD.
55 W. Monroe St., Ste. 3390
Chicago, IL 60606-1726
312-726-1092
Fax: 312-726-1093
Email: Keith@KeoghLaw.com
    tsostrin@keoghlaw.com

*Attorney for Plaintiff*
Steven L. Woodrow
Megan Lindsey
EDELSON LLC
999 18th Street, Suite 3000
Denver, CO 80202
303-357-4878
Fax: 312-589-6378
Email: swoodrow@edelson.com
    mlindsey@edelson.com

*Attorney for Defendant DISH Network, L.L.C.*
Todd Estes Mackintosh
WOOD, RIS & HAMES, P.C.
1775 Sherman Street, Suite 1600
Denver, CO 80203-4317
303-863-7700
Fax: 303-830-8772
Email: tmackintosh@wrhlaw.com

*Attorney for Plaintiff*
David Schafer, Esq.
Brian Trenz, Esq.
THE LAW OFFICES OF
    DAVID SCHAFER, PLLC
2139 NW Military Highway, Suite 200
San Antonio, TX  78213
Tel:  210-348-0500
Email: david@helpingtexas.com
    brian@helpingtexas.com

*/s/Zuzana S. Ikels*
Zuzana S. Ikels