IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-01952-WYD-MEH

SETH WARNICK, on behalf of himself and all others similarly situated,

     Plaintiff,

v.

DISH NETWORK LLC,

     Defendant.

---

**ORDER DENYING CLASS CERTIFICATION AND OBJECTIONS
AND MOTIONS TO STRIKE PLAINTIFF'S EXPERTS**

---

I.    <u>INTRODUCTION</u>

     Plaintiff Seth Warnick is a consumer of cellular telephone services who complains about pre-recorded "robocalls" received from Defendant DISH Network LLC ["DISH"] on his cellular telephone without his prior express consent.  In his Class Action Complaint filed July 26, 2012, Plaintiff brings a claim on behalf of himself and all others similarly situated for violations of the Telephone Consumer Protection Act ["TCPA"]. Plaintiff alleges that DISH has also placed similar pre-recorded "robocalls" to the cellular telephone numbers of thousands of similarly situated persons without their prior express consent and that DISH has documented thousands of instances of such calls in a computer database called the "TCPA Tracker."  Plaintiff seeks statutory damages, injunctive relief, and reasonable attorneys' fees and costs.

This Order addresses Plaintiff's Motion for Class Certification filed August 9, 2013.  A response to the motion was filed on September 9, 2013, a reply was filed on October 4, 2013, a sur-reply was filed on February 7, 2014, and a response to the sur-reply was filed on February 28, 2014.  An evidentiary hearing was held on the motion on March 19 and March 20, 2104.  This Order also addresses DISH's objections and motions to strike the opinions and testimony of Plaintiff's experts offered in support of class certification.

Plaintiff originally sought to certify a class defined as:

all persons within the United States to whose cellular telephone number (a) DISH or any entity on its behalf, placed a non-emergency telephone call (b) through the use of an automatic telephone dialing system or an artificial or pre-recorded voice (c) within four years prior to the filing of this lawsuit (d) where Dish cannot show that the person provided prior express consent for such calls.

and a sub-class defined as:

all persons within the United States to whose cellular telephone number (a) DISH placed a non-emergency telephone call (b) through the use of an automatic telephone dialing system or an artificial or pre-recorded voice (c) within four years prior to the filing of this lawsuit (d) who was not a DISH customer at the time of the calls.  Excluded from this class are any persons of whom DISH has a record of providing prior express consent for such calls.[1]

During the first day of the hearing on Plaintiff's motion, I expressed concern about certifying a large class of all persons called without consent because of the need to look at "millions and millions" of customer records, and asked Plaintiff to submit

---

[1] In the briefing on class certification, Plaintiff proposed an alternative definition deleting the last sentence of the sub-class.

a proposed modified definition to address this concern and narrow the issues.  (Tr.

March 19, 2014 Hr'g, ECF No. 216, at 39-44.)  I stated that "under no circumstance can

I consider certifying a class if we are talking about having to look at millions and millions

of calls."  (*Id.* at 44:2-4.)  Plaintiff then submitted a modified class definition comprised

of:

> All persons within the United States to whose cellular telephone number
> (a) DISH placed a non-emergency telephone call
> (b) through the use of an automatic telephone dialing system or an
> artificial or pre-recorded voice
> (c) within four years prior to the filing of this lawsuit
> (d) who were not DISH customers at the time of the calls, such as persons
> who were identified in the TCPA Tracker
> (e) or have been identified in DISH's records as being called after they
> appeared on DISH's Do Not Call list.

After receipt of this revised class definition, DISH continued to object to the class

definition.  Among other things, it argued that the amendment to the class definition to

include people who were "identified in DISH's records as being called after they

appeared on DISH's Do Not Call List" would make the class unmanageable as it would

encompass approximately 7 million DISH customers.  (Tr. March 20, 2014 Hr'g, ECF

No. 217, at 215-217.)  I ordered the parties to meet and confer as to the class definition

and the documents Plaintiff sought regarding same.   (*Id.* 224.)

Plaintiff has now clarified that section (e) of the class definition refers only to

those do-not-call requests that DISH refers to as "suppression requests", rather than all

do-not-call-requests such as those that relate to telemarketing calls. (*See* Pl.'s

Supplemental Mem. Regarding Class Definition and Ex. 1 thereto, ECF No. 219.)

Plaintiff asserts that his revision to section (e) to encompass only suppression requests

greatly reduces the number of class members at issue.  Thus, Plaintiff now seeks

certification of the following class:

> All persons within the United States to whose cellular telephone number
> (a) DISH placed a non-emergency telephone call
> (b) through the use of an automatic telephone dialing system or an
> artificial or pre-recorded voice
> (c) within four years prior to the filing of this lawsuit
> (d) who were not DISH customers at the time of the calls, such as persons
> who were identified in the TCPA Tracker
> (e) or have been identified in DISH's records as being called after they
> appeared in a suppression request.

At the hearing, I provisionally granted Plaintiff's class certification motion subject

to approving an order on the motion, and ordered Plaintiff to file a proposed order by

April 7, 2014.  DISH was ordered to file a response to the proposed order by April 21,

2014.  (*See* Minute Order of March 20, 2014, ECF No. 215.)  On March 31, 2014, I

issued an Order Clarifying Courtroom Minutes in which I stated:

> The Minutes do not reflect the final order on Plaintiff's Motion for Class
> Certification for purposes of F.R.C.P. 23(f). The final, appealable order on
> Plaintiffs' Motion for Class Certification will be issued and entered after the
> Court considers Plaintiff's proposed order granting Plaintiff's motion for
> class certification and DISH's response thereto.

(ECF No. 218.)

On April 7, 2014, Plaintiff filed his Supplemental Memorandum Regarding Class

Definition as well as his [Proposed] Order Granting Plaintiff's Motion for Class

Certification.  On that same date, DISH filed a Brief Regarding Plaintiffs' [sic] Newest

Proposed Amended Class Definition.  On April 21, 2014, DISH filed a Response to

Plaintiff's Supplemental Memorandum and Objections to Plaintiff's Proposed Order

Granting Plaintiff's Motion for Class Certification.  On April 29, 2014, without waiving its

objection to the ruling granting the motion for class certification or stipulating that certification of a class is appropriate, DISH filed a "Proposed Class Definition that Reflects the Court's Instructions and Statement of Intent at the March 19 and 20, 2014 Hearing on Plaintiff's Motion for Class Certification." Its proposed definition is:

> Authorized Users of cellular telephone numbers listed in the "non-customer" field of DISH's TCPA Tracker, to the extent identifiable by telephone company records, who, at the time DISH called that number, satisfy all of the following criteria:
> (1) had a name, as identified in the TCPA Tracker, different from the name of either the DISH customer or an authorized DISH user name (as shown in DISH's CSG database), and
> (2) did not share an address or last name with the DISH customer whose account the call concerned, as shown in a comparison of telephone company records and DISH customer records, and
> (3) had no other affiliation (*e.g.*, familial, employment, business, fiduciary, personal, or professional) with the DISH customer whose account was called, or DISH authorized users of the DISH television service, as shown in that Authorized User's responses to the questions asked in the class identification verification page of the Warnick Class Website, and
> (4) timely provides the verified information requested in the Warnick Class Website Questionnaire (to be drafted jointly by counsel), and timely provides cell phone billing or calling records showing their number to have been called on the pertinent date(s) by mailing a true and correct copy of such records to the Class Administrator.

(ECF No. 235, Attach. A.)

From the foregoing, the issue of class certification and the proposed order to be issued as to same as well as the class definition have been thoroughly and exhaustingly briefed. I have reviewed all the arguments, evidence and submissions. While I was initially inclined to, and indeed, provisionally granted Plaintiff's class certification motion subject to approval of an order, I now find, for the reasons discussed below, that

Plaintiff's class definition is overbroad and inadequate as it does not address concerns raised by me at the hearing and objections raised by DISH which I find to be valid.

II.  <u>ANALYSIS</u>

    A.  <u>General Requirements for Class Certification</u>

    "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S. Ct. 2541, 2550 (2011).  Fed. R. Civ. P. 23(a) "states four threshold requirements applicable to all class actions:  numerosity (a 'class [so large] that joinder of all members is impracticable'); commonality ('questions of law or fact common to the class'); typicality (named parties' claims or defense 'are typical ... of the class'); and adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Additionally, a party seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3).  *Id.* at 614.  Finally, although not specifically mentioned in Rule 23, there must be an ascertainable class.  *See Edwards v. Zenimax Media, Inc.*, No. 12-cv-00411-WYD, 2012 WL 4378219, at *4 (D. Colo Sept. 25, 2012); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, (W.D. Wash. 2012) ("In addition to the Rule 23(a) requirements, courts have also recognized that ensuring the members of the class can be ascertained with 'reference to objective criteria' is an implicit requirement for class certification) (quoting Newberg on Class Actions § 3:1).

    The plaintiff bears the "strict" burden of proving that the requirements of Rule 23 have been met.  *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725

F.3d 1213, 1218 (10th Cir. 2013); *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir.2006).  The court is required to engage in a "rigorous analysis" into whether the requirements of Rule 23 are satisfied.  *Dukes*, 131 S. Ct. at 2551.  While Plaintiff argues that the court must generally accept the substantive, non-conclusory allegations of the complaint as true, the Supreme Court recently clarified that "Rule 23 does not set forth a mere pleading standard."  *Id*.  Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule. . . ."  *Id*.  Thus, "sometimes it may be necessary for the court to probe behind the pleadings before coming to reset on the certification question,'. . . ."  *Id*. (quotation omitted); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (*Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues.").

   B.   Adequacy of the Class

   I find that the dispositive issues at this juncture of the case are whether Plaintiff's current class definition is adequate or sufficiently defined and whether it is overbroad. The issue of adequacy must generally be determined before the court addresses the prerequisites of Rule 23(a).  *Kelecseny v. Chevron, U.S.A.*, Inc., 262 F.R.D. 660, 667 (S.D. Fla. 2009).  "A class is sufficiently defined if it is 'administratively feasible for the court to determine whether a particular individual is a member.'"  *Edwards*, 2012 WL 4378219, at *4 (citing *Davoll v. Webb*, 160 F.R.D. 142, 143 (D. Colo. 1995)). "'Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.'"  *Carrera v. Bayer*

*Corp.*, 727 F.3d 300, 307-08 (3rd Cir. 2013) (quotation omitted).  "If the members of the class can be ascertained by reference to objective criteria, then the class is adequately defined."  *Edwards*, 2012 WL 4378219, at *4; *Anderson v. Merit Energy Co.*, Nos. 07-cv-00916, 07-cv-1025, 2008 WL 2484187, at *2 (D. Colo. June 19, 2008) (citing Fed. Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) § 21.222)); *see also* 1 Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed. 2013) (the focus is "on the question of whether the class can be ascertained by objective criteria").

> As further explained by another district court addressing a TCPA class action:

> A class definition should be "precise, objective and presently ascertainable." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal.1998). While the identity of each class member need not be known at the time of certification, the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Id.* It is not fatal for class definition purposes if a court must inquire into individual records, so long as "the inquiry is not so daunting as to make the class definition insufficient." *Herkert v. MRC Receivables Corp.,* 254 F.R.D. 344, 348 (N.D.Ill.2008) (internal quotation marks and citation omitted).

*Agne*, 286 F.R.D. at 566.  Thus, the class "must meet a 'minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.'"  *Id.* (quotation omitted).

If the court must undertake individualized inquiries in order to determine whether a person is a member of the class, the class is not appropriate.  *See Davoll*, 160 F.R.D. at 146.  Thus, the Third Circuit noted recently "that '[i]f class members are impossible to identify without extensive and individualized fact-finding or mini-trials,' then a class action is inappropriate."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3rd Cir. 2013) (quoting *Marcus v. BMW of N. Am., LLD*, 687 F.3d 582, 593 (3rd Cir. 2012) and

citing William B. Rubenstein, Newberg on Class Actions § 3:3 (5th ed. 2011) ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.")).  The Third Circuit "noted that other courts have gone so far as to hold 'that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails.'"  *Id.* (quoting *Marcus,* 687 F.3d at 593).

The "rigorous analysis" applicable to Rule 23's requirements apply to the ascertainability requirement.  *Carrera*, 727 F.3d at 306.  "'A party's assurance to the court that it intends or plans to meet the requirements [of Rule 23] is insufficient.'"  *Id.* (quoting *In Re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3rd Cir. 2008)).  Thus, "[]a plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful."  *Id.*   This is because "'[a] critical need' of the trial court at certification is to determine how the case will be tried,'. . . ."  *Id.* (quotation omitted).

Related to ascertainability are problems with overbreadth of the class.  *Messner v. Northshore Univ.- Healthsystem*, 669 F.3d 802, 824-25 (7th Cir. 2012).  A class is overbroad, and should not be certified, if it includes "a great number of members who could not have been harmed by the defendant's allegedly unlawful conduct."  *Id.* at 824.  There is a necessity of rigorous analysis on this issue "because of the 'potential unfairness to the class members bound by the judgment if the framing of the class is overbroad.'"  *Trevizo*, 455 F.3d at 1163 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

I now turn to the most recent class definition that Plaintiff proposes.  He seeks to certify a class of those individuals to whom DISH placed robocalls who were either not a DISH customer or who previously asked DISH to cease making such calls through a suppression request.  Plaintiff argues that it is administratively feasible to determine whether any particular individual meets these criteria because DISH's business records identify its customers and the telephone numbers robocalled by its dialer.

Plaintiff also identifies a methodology for ascertaining the class members. ([Proposed] Order Granting Pl.'s Mot. Class Certification, ECF No. 220, at 9-11.)  He relies on the ability of his expert witness Robert Biggerstaff to query DISH's records and the ability of various vendors to scrub the list of telephone numbers at issue to identify which of those were assigned to cellular telephone service at the time of the calls.

Further, as to the portion of the class that are noncustomers who were robocalled, Plaintiff proposes that where the TCPA Tracker identifies the first and last name of the complainant, that person will be a class member.  Where the first and last name are not identified, he proposes subpoenaing telephone carriers for the telephone numbers and directing them to (1) identify the name, address, and social security number of the subscriber to that number at the time of the calls, and (2) identify how many separate telephone lines were on that account.  Plaintiff will then utilize A.B. Data to identify other addresses associated with those persons and the names of other household members at those addresses during the relevant time period.  Thereafter, DISH's customer database will be queried for those names, addresses, and social security numbers—any matches will be excluded from the class as a potential customer

of DISH and the remaining persons will be class members.  Should the Court require a

final cross-check on the reliability of the methodology after a finding of liability, Plaintiff

asserts it could order that notice be provided to those class members who had more

than one telephone line that would require them to access a website and provide their

cellular telephone number at the time of the calls to ensure they are the person

robocalled by DISH rather than a person sharing a family plan with such a person.

DISH objects to the newly revised class definition, arguing that it has the same

problems as the original class definition and is compounded by new ones.  DISH

asserts that the only calls that can be in Plaintiff's class are anomalies—calls made by

mistake because of data entry or customer error, and that it is illogical and

unprecedented to suggest a class of anomalies is ascertainable through objective,

reliable proof on a class-wide basis.  DISH also objects to the methodology proposed by

Plaintiff for ascertaining the class.

Turning to my analysis, I find that the class is not administratively feasible, and

thus not ascertainable.  Instead of limiting the class definition to the TCPA Tracker

Dataset of 27,000+ individuals as discussed at the hearing and which I indicated might

be a manageable class, Plaintiff has purposely kept the class definition broad, including

in section (d) of the class those "who were not DISH customers at the time of the calls,

such as persons who were identified in the TCPA Tracker."  Thus, while Plaintiff

referenced the TCPA Tracker in his definition, he did not limit the class to people within

that Tracker as discussed at the hearing on class certification.  He also added an

entirely new class consisting of both customers and noncustomers of DISH who were

called after making a suppression request, even though Plaintiff has not presented any

evidence that anyone has ever been called after making a suppression request.

Plaintiff also removes "consent" from the definition of the class, meaning as to the sub-

class in section (d) that the class would include all persons called *with* their consent.

DISH asserts that the proposed class definition, as revised, will require that *all* of

DISH call records and *all* of its 25 million customer accounts be reviewed to find

potential class members.  DISH argues, and I agree, that Plaintiff asks to impose an

enormous and disproportionate burden on DISH—to notify and obtain consent under

the Satellite Television Extension and Localism Act ("STELA"), 47 U.S.C.

§ 338(i)(4)(A)[2], from all of its 25 million customers to produce and allow Plaintiff's

counsel and his experts to search through 600+ million calls and account records to try

and find potential class members.  Indeed, given the way the subclass is defined in

section (e), DISH asserts that there is no other means of trying to figure out whether a

number was called.  Plaintiff has thus not heeded my statement at the hearing that

"under no circumstance can I consider certifying a class if we are talking about having to

look at millions and millions of calls."  (*Id.* at 44:2-4.)[3]

---

[2] Although a satellite carrier may disclose a subscriber's personally identifiable information if ordered to do so by a court, the subscriber must still be notified of the court order requiring disclosure of his or her private, personally identifiable information.  *Id.* § 338(i)(4)(B)(ii).

[3] In so finding, I reject Plaintiff's arguments that the suppression requests are documented in the TCPA Tracker, not DISH's do-not-call list of seven million people, and that this addresses the concerns about manageability.  DISH has shown that Plaintiff has mistakenly conflated do-not-call ["DNC"] requests with suppression requests.  The DNC list relates solely to telemarketing and solicitation calls.  (ECF No. 221-8 [Aff. of J. Montano] ¶¶ 6-8.)  Indeed, a DNC request is a defined term in the TCPA.  "[T]he National Do-Not-Call List does not apply to calls that do not fall within the definition of 'telephone solicitation' as defined in section 227(a)(3)."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act*, 23 FCC Rcd. 559, 565, ¶ 11 n.42 (Jan. 4, 2008).  Thus, only telephone solicitations "as defined in section 227(a)(3)" are governed by the national DNC list.  Informational calls

Based on the foregoing, I find that the proposed class is not administratively feasible because identifying the class members is not a manageable process and would require extensive individual factual inquiry.  *See Carrera*, 727 F.3d at 307-08.  The inquiry into factual records to determine class members is "so daunting as to make the class definition insufficient."  *Agne*, 286 F.R.D. at 566.

Also, as to the sub-class proposed in section (d), Plaintiff's methodology for ascertaining class members presumes that a person identified in DISH's records as "not a customer" is a class member, at least as to persons who have provided their full name to DISH.  (*See* [Proposed] Order Granting Pl.'s Mot. Class Certification, ECF No. 220, at 10.)[4]  I find that this presumption is not supported by the evidence, rendering the class overbroad and requiring individualized factual inquiry into which of these persons is actually a class member.  As DISH points out, the 600+ million phone numbers it called were provided by its customers, *i.e.*, every customer consented to be called at the number he/she provided and the calls made by DISH were informational calls.  DISH asserts that there are many different scenarios in which the numbers provided to it may

---

are not included in the DNC type of calls.  Suppression requests, by contrast, relate solely to *informational calls* that DISH makes to its own customers as part of its ongoing service to them.  *See id.* at 564, ¶ 9.  Such calls are different than solicitation calls.  *See* 47 U.S.C. § 227(a)(3) ("'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship. . .").

[4] This appears to be a brand new contention that was not advanced by Plaintiff's experts.  Robert Biggerstaff previously testified that all of the TCPA tracker entities would be tested using his matching methodology, not just those where the tracker shows no name or partial names or invalid names.  (*See* Tr. Mar. 19, 2014 Hrg. at 34:3-24; ECF No. 112-9 [Biggerstaff Rebuttal Rpt.] ¶ 28.)

have been associated with someone other than the named account holder on DISH records.  This is borne out in DISH's records that reflect households subscribe to DISH under one named account holder for a family, friends or roommates, all of whom may have provided consent to be called.  (ECF No. 83-5 [Metzger Aff.] at ¶ 18(c).)

Thus, I am now persuaded that the fact DISH had *consent* to call a particular number does not turn on whether the called party was the actual, *named customer* in DISH's records.  (ECF No. 83 [Picchione Aff.] ¶¶ 4, 14-15—DISH makes informational calls to the numbers provided by its customers and agents do not record or investigate who is the user/ subscriber of a phone).  Although invited to do so by DISH, Plaintiff refused to exclude household members and familial relationships from the new definition and has made no suggestion as to how to exclude consent from a broader class of non-customers, even though his expert Robert Biggerstaff admitted that such consenting persons cannot be in the class.  (*See* DISH's Objections to Pl.'s Proposed Order Granting Pl.'s Mot. Class Certification, Ex. A [Biggerstaff Dep.] at 103:9-105:17; Ex. B [Mar. 19, 2014 Hr'g Tr.] at 93:6-95:24.)[5]  Again, this makes the class overbroad and unascertainable, as it cannot be determined from the objective criteria of DISH's records.  The sub-class is made even more overbroad because it now includes persons called with their consent.  *See Gannon v. Network Tel. Services, Inc.*, No. 12-9777-RGK, 2013 WL 2450199, at *2-3 (C.D. Cal. June 5, 2013) (finding in a situation where

---

[5] Indeed, Mr. Biggerstaff admitted his methodology would produce many false positives, such as a husband and wife with different last names and different mailing or billing addresses.  (DISH's Objections to Pl.'s Proposed Order Granting Pl.'s Mot. Class Certification, ECF No. 230, Ex. A [Biggerstaff Mar. 18, 2014 Dep.] at 104:10-105:17.)

the defendant provided evidence that some of the putative class members may have provided consent to text messages that the proposed TCPA class was "unascertainable and unidentifiable" because the class definition would require individualized inquiry into whether the class members consented); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235-35 (S.D. Ill. 2011) (finding in TCPA case that class was not sufficiently defined and was overbroad where plaintiff, who was called because he had a telephone number that previously belonged to a customer of the defendant, sought to certify a class that included "a substantial number of people who voluntarily gave their telephone numbers" to the defendant, and determining who would be in a class narrowed to an appropriate size could not be done by reference to objective criteria applied class-wide and would be an unmanageable task").[6]

Based on the foregoing, I find that Plaintiff's Motion for Class Certification must be denied because the class is not sufficiently ascertainable and is overbroad. Accordingly, I need not address DISH's other objections to the class proposed by Plaintiff or the requirements of Rule 23.

---

[6] Plaintiff asserts that the "not a customer" designation means exactly what it says, at least as to those people who have provided DISH his or her full name. In light of the purpose of the TCPA Tracker and the step-by-step protocol that DISH's employees are instructed to follow while utilizing the Tracker interface, he argues that the Court should not be persuaded by DISH's attempt to dispute the reliability of its own business records. I reject this argument. As explained in the affidavit submitted of DISH's employee Marciedes Metzger, the so called "protocol" Plaintiff relies on is not actually a protocol. Other than the telephone number, none of the other information in the so called "protocol" was required or usually filed out by DISH. (*See* ECF No. 83-5 [Metzger Aff.] ¶ 15-17.) DISH did not investigate the veracity or accuracy of the information provided by the caller, and callers often provided very little information. (*Id.* ¶¶ 11-14.) While Plaintiff argues that the Court should not rely on Ms. Metzger's affidavit, I find this unpersuasive. For example, Plaintiff asserts that Ms. Metzger does not identify any instances in which the "not a customer" designation was actually incorrect; however, she identified the actual reasons that the "not a customer field" was tagged in the TCPA Tracker. (*Id.* ¶ 18.)

I also agree with DISH that section (e) is an entirely new sub-class that was never proposed before.[7]  As DISH asserts, the new class amendment is not a minor modification.  Plaintiff's proposal: (1) does not limit the class definition to the TCPA Tracker Dataset of 27,000+, (2) does not define "customer" (or suggest how such a group of calls will be identified), (3) deletes any reference to "consent", and (4) seeks to include in the class a new group of individuals that *might* have been called after requesting a number be suppressed[8], without the benefit of legal briefing.

I acknowledge that I am not bound by the original proposed class definition. *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999) (courts have "broad discretion" to "modify the definition" of the class); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition").  However, I am concerned that allowing a substantive revision to the class definition after the hearing and the briefing has concluded and without any discovery or discussion by Plaintiffs' experts of the methodology for ascertaining this class would be improper and prejudicial to DISH.  *See In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 445 n.4 (D. Kan. 2006) (refusing to adopt revised class definition that "contains new verbiage that is arguably critical but was not proposed until such a late date (*after* plaintiffs submitted their reply brief and *after* the

---

[7] None of the three proposed class definitions set forth in Plaintiff's class certification briefing discuss this group, nor is there any discussion of this group in the methodology of the expert reports or elsewhere in the briefs.  This proposed sub-class has also not been the subject of discovery.

[8] There is no evidence that any individual was actually called after he or she requested that a number be suppressed.

class certification hearing)" (emphasis in original)); *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 409 (M.D. Fla. 2004) (refusing to certify overbroad revised class definition proposed for first time in reply brief).

The question then becomes whether I should attempt to revise the class definition in some way to try to make the class ascertainable.  Notably, if I were to limit the class as defined in section (d) to persons in the TCPA Tracker, Plaintiff would not be included in the class.  Since he never called DISH to complain about calls, he was not a part of the TCPA Tracker.  He also would not be a member of the other subclass in section (e) of the class definition, which is comprised of customers and non-customers that made a suppression request but may have been inadvertently called thereafter. *See Labou v. Cellco Partnership*, No. 13- 844, 2014 WL 824225, at *4 (E.D. Cal. Mar. 3, 2014) ("Plaintiff, as a non-Verizon customer, presents different claims than that of Verizon customers. . . .")

Accordingly, a revision limiting the class to persons identified in the TCPA Tracker would not be appropriate as Plaintiff would lack standing to sue as a class representative.  *See Dukes*, 131 S. Ct. at 2550 ("a class representative must a part of the class" he seeks to represent); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents"); *Labou*, 2014 WL 824225, at *4-5 (denying class certification where plaintiff sought to certify a TCPA class of customers and non-customers of Verizon who were called

without consent because the claims of plaintiff as a noncustomer were not typical of the class of customers).  As noted by another district court, whose reasoning I find persuasive:

> The procedural expedient of plaintiff class certification should not be mistaken for the sort of legal relationship that confers standing on representatives to litigate the claims of individual members. . . . In *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 694-95 (E.D.Pa.1973), Judge Newcomer stated that a plaintiff "may not use the procedural device of a class action to boot strap himself into standing he lacks under the express terms of the substantive law.... The plaintiff's standing to bring an action against each defendant named in the Complaint must be established independently of Federal Rule of Civil Procedure 23. Only then is a plaintiff in a position to represent others having similar claims against those same defendants."

*Akerman v. Oryx Commc'ns, Inc.*, 609 F. Supp. 363, 377 (S.D.N.Y. 1984).

While DISH has proposed an alternative class definition, Plaintiff did not agree to that definition.  (*See* ECF No. 221, Ex. D [Email from T. Sostrin to Z. Ikels] stating "the proposed class definition has never been limited only to people in TCPA Tracker.")  Accordingly, I do not think it appropriate to consider the adequacy of DISH's proposed class definition or to *sua sponte* revise the class definition myself.  Since Plaintiff is seeking class certification, he must be the one to propose an adequate class definition that is not overbroad.  As stated in the *Polo v. Goodings Supermarkets* decision:

> Even assuming that this Court could revise and limit an overly broad class definition *sua sponte*, . . ., the Court sees no reason to do so here.  The plaintiff has the burden of proposing a class that meets the Rule 23 requirements. . . . Polo has had adequate time to discover relevant facts. Polo has already abandoned one class definition, and substituted a new one after both defendants' briefs had been filed.  The revised definition has failed as well, this Court has no obligation to craft a new class.

*Id.*, 232 F.R.D. at 409.

Accordingly, Plaintiff's Motion for Class Certification is denied.  However, this denial does not preclude Plaintiff from filing a new motion for class certification that proposes an ascertainable class supported by the evidence and a reliable methodology and that meets the requirements of Rule 23.  Indeed, DISH acknowledges in connection with Plaintiff's latest class definition that the proper procedure for authorizing amended class definitions of this magnitude is to deny the motion but grant the plaintiff the opportunity to file a new Rule 23 motion.  *See, e.g., Donaca v. Dish Network, LLC*, No. 11-cv-2910, 2014 WL 623396, at *4 (D. Colo. Feb. 18, 2014) (noting that the court denied certification of the class proposed in plaintiff's reply brief (of which the plaintiff was not a member) but granted the plaintiff leave to file a new motion for class certification); *Naylor Farms v. Anadarko OGC Co.*, No. CIV-08-668, 2009 WL 8572026, at *3 (W.D. Okla. Aug. 26, 2009) (granting motion to strike third amended class definition that increased the scope of the class, where there was no evidence and where it would be unfair to defendants who had been defending based on second amended definition).

C.     DISH's Objections and Motions to Strike Plaintiff's Experts

I now turn to DISH's objections and motions to strike the report, rebuttal report and testimony of Robert Biggerstaff, as well as objections and motions to strike the affidavit, rebuttal affidavit and testimony of Anya Verkhovskaya.  These reports, affidavits and testimony were offered by Plaintiff's experts Robert Biggerstaff and Anya Verkhovskaya in support of Plaintiff's Motion for Class Certification.  Since I have denied Plaintiff's class certification motion, I find that DISH's objections and motions to

strike as to these experts should be denied as moot.  I note for Plaintiff's reference that if he proposes a new class definition in a new motion for class certification and intends to rely on his experts in support of same, he will need to file new reports and/or affidavits of these experts.

III.     CONCLUSION

Based on the foregoing,

ORDERED that Plaintiff's Motion for Class Certification filed August 9, 2013 (ECF No. 61) is **DENIED**.  It is

FURTHER ORDERED that the document entitled "Defendant DISH Network L.L.C.'s Objections and, in the Alternative, Motion to Strike the Report and Testimony of Plaintiff's Expert Robert Biggerstaff Offered in Support of Plaintiff's Motion for Class Certification" (ECF No. 76) is **DENIED AS MOOT**.  It is

FURTHER ORDERED that the document entitled "Defendant DISH Network L.L.C.'s Objections and, in the Alternative, Motion to Strike the Affidavit and Testimony of Plaintiff's Expert Anya Verkhovskaya Offered in Support of Plaintiff's Motion for Class Certification" (ECF No. 78) is **DENIED AS MOOT**.  It is

FURTHER ORDERED that the document entitled "Defendant DISH Network L.L.C.'s Objections and, in the Alternative, Motion to Strike the 'Rebuttal' Affidavit of Plaintiff's Expert Anya Verkhovskaya Offered in Support of Plaintiff's Motion for Class Certification" (ECF No. 154) is **DENIED AS MOOT**.  Finally, it is

ORDERED that the document entitled "Defendant DISH Network L.L.C.'s Objections and, in the Alternative, Motion to Strike the 'Rebuttal' Report of Plaintiff's

Expert Robert Biggerstaff Offered in Support of Plaintiff's Motion for Class

Certification" filed November 8, 2014 (ECF No. 155) is **DENIED AS MOOT**.

Dated:  June 27, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge